**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| American Automobile Insurance Company,<br><br>Plaintiff,<br><br>v.<br><br>Rhonda Cerny, et al.,<br><br>Defendants. | No. CV-18-01597-PHX-SMB<br><br>**ORDER** |

Pending before the Court is Plaintiff's Motion for Summary Judgment or, In The Alternative, Partial Summary Judgment. (Doc. 24, "Mot."). Defendant Rhonda Cerny filed a Response, (Doc. 31, "Resp."), and Plaintiff filed a Reply, (Doc. 33, "Reply"). Oral argument was heard on May 3, 2019.

**BACKGROUND**

American Automobile Insurance Company (AAIC) issued Rhonda Cerny a homeowners policy that was in effect from October 23, 2014 through October 23, 2015 (the "Policy"). (Doc. 1-2, Ex. C, "Policy"). The Policy incorporates a 5250 6-09 Prestige Home Premier Coverage form which affords liability coverage as follows:

> If a claim is made or a suit is brought against an **insured**, anywhere in the world, for damages because of **bodily injury**, **personal injury**, or **property damage** caused by an **occurrence** we will:
>
> 1. Pay on behalf of the **insured** up to the limit of insurance shown on the Declarations for damages for which the **insured** is legally liable . . . ; and,

> 2. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages . . . . We have no duty to defend any suit or settle any claim for **bodily** injury, **personal injury** or **property damage** not covered under this policy.

(Policy at 55) (emphasis in original). Under the Policy, "occurrence" is defined as "[a]ccidental loss or damage . . . which results, during the policy period, in **bodily injury** or **property damage**." (Policy at 39) (emphasis in original). The Policy separately includes the following exclusion:

> Personal Liability and Medical Payments to Others coverages do not apply to damages resulting from **bodily injury**, **personal injury**, or **property damage** arising out of . . . any criminal, willful, malicious or other act or omission that is reasonably expected or intended by any **insured** to cause damage. These acts are not covered even if the damage is of a different kind or degree, or is sustained by a different person, than expected or intended. We do provide coverage if the act arose from the use of reasonable force to protect people or property.

(Policy at 57) (the "Intentional/Criminal Acts Exclusion") (emphasis in original).

In July 2015, Rhonda Cerny shot Craig Cerny. As a result of the investigation, R. Cerny was charged with several criminal offenses. Ultimately, R. Cerny plead guilty to Aggravated Assault, a class 3 dangerous domestic violence felony. (Doc. 1-2, Ex. A). The factual basis for her plea was that she recklessly caused serious physical injury to C. Cerny by use of a deadly weapon, a gun. (Doc. 30, Ex. 2). C. Cerny filed a civil suit against R. Cerny in Maricopa County Superior Court in June 2017 (the "Civil Matter"). (Doc. 1-2, Ex. B). In the complaint in the Civil Matter, C. Cerny alleges the following:

> 15. . . . [R. Cerny] entered [C. Cerny's] Home alone, through the garage door, without [C. Cerny's] knowledge or permission.
>
> 18. Within approximately 1-3 minutes of entering the Home, [R. Cerny] shot [C. Cerny] in the chest with a .22 caliber revolver.

> 19. [C. Cerny] and [R. Cerny] were approximately five (5) – ten (10) feet away from each other when [C. Cerny] was shot.
>
> 25. [R. Cerny] pleaded guilty to aggravated assault, a class 3 dangerous domestic violence felony per Plea Agreement dated January 11, 2017.

(Doc. 1-2, Ex. B). AAIC then filed this Complaint requesting declaratory relief. AAIC seeks a determination that the insured is not covered for the shooting for two reasons. First, AAIC asks for a determination that the shooting does not qualify as an "occurrence" under the Policy and is therefore not covered. Second, AAIC ask for a determination that the shooting is excluded under the Policy's Intentional/Criminal Acts Exclusion.

**DISCUSSION**

**I.  Legal Standards**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is any factual issue that might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

Arizona law directs courts to construe an insurance contract "according to [its] plain and ordinary meaning." *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 13 P.3d 785, 788 (Ariz. Ct. App. 2000); *see also Aztar Corp. v. U.S. Fire Ins. Co.*, 224 P.3d 960, 966 (Ariz. Ct. App. 2010) ("In construing a contract, we 'give words their ordinary, common sense meaning.'"). "It is well settled that a liability insurer's duty to defend is separate from, and broader than, the duty to indemnify." *Quihuis v. State Farm Mut. Auto. Ins. Co.*, 334 P.3d

719, 727 (Ariz. 2014). "The scope of the duty to defend under an insurance policy can be broader than the scope of the duty to indemnify." *Lennar Corp. v. Auto-Owners Ins. Co.*, 151 P.3d 538, 543 (Ariz. Ct. App. 2007). Whether an insurer has a duty to defend an insured against a lawsuit is determined by the allegations made against the insured by the plaintiffs in that action. *W. Cas. & Sur. Co. v. Int'l Spas of Ariz., Inc.*, 634 P.2d 3, 7 (Ariz. Ct. App. 1981). If the plaintiffs' allegations do not implicate the insurance coverage, then the insurers do not owe a duty to defend. *Lennar*, 151 P.3d at 544. In contrast, "[a]n insurer's duty to indemnify hinges not on the facts the claimant alleges and hopes to prove but instead on the facts (proven, stipulated or otherwise established) that actually create the insured's liability." *Colorado Cas. Ins. Co. v. Safety Control Co.*, 288 P.3d 764, 772 (Ariz. Ct. App. 2012). "Generally, the insured bears the burden to establish coverage under an insuring clause, and the insurer bears the burden to establish the applicability of any exclusion." *Keggi*, 13 P.3d at 788.

## II. Analysis

### A. *Is the shooting a covered "occurrence"?*

AAIC first argues that no claims arising from an occurrence are alleged. (Mot. at 12–14). Under the Policy, AAIC agreed to indemnify and defend R. Cerny "[i]f a claim [was] made or a suit [was] brought against [her] for damages because of **bodily injury**, **personal injury**, or **property damage** caused by an **occurrence**." (Policy at 55) (emphasis in original). An "occurrence" is defined as "[a]ccidental loss or damage . . . which results, during the policy period, in **bodily injury** or **property damage**." (Policy at 39) (emphasis in original). Under Arizona law, "[t]he word 'accident,' as used in insurance policies, is generally defined as 'an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force." *GRE Ins. Grp. v. Green,* 980 P.2d 963, 965 (Ariz. Ct. App. 1999) (quoting *Century Mut. Ins. Co. v. S. Ariz. Aviation, Inc.,* 446 P.2d 490, 492 (Ariz. App. 1968)). "The usual understanding of the word 'clearly implies a misfortune with concomitant damage to a victim, and not the negligence which eventually results in that

misfortune.'" *Id.* (quoting *Century Mut.,* 446 P.2d at 492). In this case, the shooting cannot be considered an "undesigned, sudden, and unexpected" event because, as discussed below, R. Cerny admitted that she was aware of the risk and consciously disregarded the risk of the shooting.

In the criminal case, R. Cerny admitted to recklessly causing serious physical injury to C. Cerny by shooting him. Under Arizona law, "recklessly" means

> with respect to a result or to a circumstance described by a statute defining an offense, *that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists*. The risk must be of such nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

A.R.S. § 13-105(10)(c) (emphasis added). In contrast, "criminal negligence" means

> with respect to a result or to a circumstance described by a statute defining an offense, *that a person fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists*. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

A.R.S. § 13-105(10)(d) (emphasis added). R. Cerny now argues that the shooting was an accident because the gun inadvertently fired when she picked it up. But even if she were now allowed to claim that the gun "inadvertently fired,"[1] she cannot ignore that through her plea, she stated that she was "aware of and consciously disregard[ed] a substantial and unjustifiable risk that the result [would] occur or that the circumstances exist[ed]." "Recklessly" firing a gun under the facts alleged in the Civil Matter is not the type of conduct that can be considered "undesigned, sudden, and unexpected."

The Court is not aware of an Arizona court decision as to whether criminal reckless

---

[1] The Court does not and need not determine here whether R. Cerny's statement that the gun inadvertently fired is precluded by A.R.S. § 13-807. *See Williams v. Baugh*, 154 P.3d 373, 375 (Ariz. Ct. App. 2007) ("The plain language of § 13–807 precludes the criminal defendant convicted of an offense from denying the essential allegations of that offense in a civil case brought by the person injured by the criminal act.").

- 5 -

conduct fits the definition of "occurrence," and case law from other jurisdictions goes both ways. District courts in Pennsylvania have found that reckless conduct does not comport with policy language insuring an "accident." *See e.g.*, *Westfield Ins. Co. v. Granese*, No. CIV.A. 10-795, 2011 WL 346593, at *4 (E.D. Pa. Feb. 4, 2011) (after defendant pleaded guilty to assault, the court held that even assuming that the defendant only pleaded to reckless and not intentional assault, it was "impossible to square such conduct with an 'accident,'" and such "conscious disregard . . . is inconsistent with the ordinary definition of 'accident.'"); *Colony Ins. Co. v. Mid-Atl. Youth Servs. Corp.*, No. CIVA 3:09-CV-1773, 2010 WL 817703, at *5 (M.D. Pa. Mar. 9, 2010) ("Reckless, malicious, or purposeful conspiratorial activities are not 'negligent' and cannot be considered 'accidents' under the plain language of an occurrence-based insurance policy[.]"). *But see Royal Indem. Co. v. Love*, 630 N.Y.S.2d 652, 656 (Sup. Ct. 1995) (after defendant pleaded guilty to assault for recklessly stabbing someone, the court found the stabbing was reckless, not intentional, and qualified as an "occurrence" under the insurance policy). The Court finds that under the facts here, the reasoning in the cases from Pennsylvania is persuasive.

Some of AAIC's arguments conflate the definition of "occurrence" with the intentional acts exclusion. Defendant responds by relying on *Phoenix Control Systems, Inc. v. Insurance Company of North America,* 796 P.2d 463 (Ariz. 1990), asserting the "subjective intent of the actor to cause harm may create a question of fact as to whether there has been an '*accident*' under the policy." (Resp. at 3) (emphasis added). In *Phoenix Control*, the policy covered an "*occurrence*," defined as "an *accident* . . . that results . . . in loss or damage to your property, or in bodily injury, personal injury, or property damage. Such injury or damage must be *neither expected nor intended by the insured*." 796 P.2d at 466–67 (alteration in original). The *Phoenix Control* court never directly discussed the definition of "*accident*," but focused its analysis on the "*intentional acts*" exclusion found within the definition of occurrence. Defendant's assertion, as well as some of AAIC's argument, is directed to an intentional acts exclusion, and not specifically to whether the facts here are included under the Policy's definition of "occurrence"—defined expressly

as "[a]ccidental loss or damage . . . which results, during the policy period, in **bodily injury** or **property damage**." The policy in *Phoenix Control* merely included an intentional acts exclusion within the definition of "occurrence."

Defendant also relies on *Farmers Insurance Company of Arizona v. Vagnozzi,* 675 P.2d 703, 709 (1983), asserting that the court there held that a policy covering "accidents" may "cover intentional act if the resulting injuries were unintended." (Resp. at 3). But that case is not helpful either as the language of the policy in *Vagnozzi* does not match the language of the contract here. In *Vagnozzi*, the policy covered "an accident," but the policy itself defined "accident" as "a sudden event . . . resulting in bodily injury or property damage *neither expected nor intended by the insured.*" *Vagnozzi*, 675 P.2d at 704 (emphasis added). That policy also expressly excluded injury or damage "arising as a result of intentional acts of the insured." *Id.* So the court in *Vagnozzi* analyzed the intentional act exception to coverage but not the definition of occurrence.

In addition to arguing that it was an accident and the gun inadvertently fired, R. Cerny also argues that she shot C. Cerny in self-defense. Even if R. Cerny is not precluded from now bringing this defense,[2] the Court finds that if she recklessly shot him in self-defense, then it cannot be considered an accident. Arizona courts have considered whether an insured acting in self-defense is covered under an insurance policy, but the analyses in those cases focus on the policies' *exclusionary* clauses, and not their *coverage* clauses. *See Fire Ins. Exchange v. Berray*, 694 P.2d 191, 193 (Ariz. 1984) (insurance company claimed that the "intentional acts" exclusion in the policy, not the definition of "occurrence," relieved it from its duty); *Transamerica Ins. Grp. v. Meere*, 694 P.2d 181, 184 (Ariz. 1984) (insurance company claimed no coverage existed based on an intentional acts exclusion— coverage did not "apply to bodily injury, personal injury, or property damage . . . expected or intended by the insured."). While both *Berray* and *Meere* reference an "occurrence" or "accident," the focus is on the intentional act exclusions. At issue here is whether self-

---

[2] Again, the Court does not and need not determine here whether R. Cerny's statement that she acted in self-defense is precluded by A.R.S. § 13-807.

defense comes within the Policy's coverage for an "occurrence," not whether it falls within a particular policy exclusion. *See Delgado v. Interinsurance Exch. of Auto. Club of S. California*, 211 P.3d 1083, 1089 (Cal. 2009) (distinguishing a case that focused on an insurance policy's exclusionary clauses from the case at hand which focused on a policy's coverage clause). Furthermore, those cases do not discuss underlying criminal convictions or pleas establishing that the person was "aware of and consciously disregard[ed] a substantial and unjustifiable risk that the result [would] occur or that the circumstance exist[ed]."

Other jurisdictions have addressed the question more clearly. For example, in *David v. Allstate Insurance Company*, No. 2:13-CV-04665-CAS (PLAx), 2014 WL 4215647, at *4 (C.D. Cal. Aug. 25, 2014), Johnson, the insured, struck David, the plaintiff, during an altercation. David then sued Johnson's insurance company requesting coverage of the injuries David sustained. *Id.* at *1. Johnson's policy was similar to the policy in the case at hand, covering bodily injury arising from an "occurrence," which was defined as an "accident," meaning "an unexpected, unforeseen, or undesigned happening or consequence[.]" *Id.* The *David* court found that Johnson's act of intentionally striking David, even if he was acting in self-defense, did not constitute an "occurrence" within the meaning of the insurance policy. *Id.* at *5–6. *But see Allstate Ins. Co. v. Takeda*, 243 F. Supp. 2d 1100, 1106 (D. Haw. 2003) (considering a policy that defined "occurrence" as an accident and stating that a layperson "would have no reason to think that an act of self-defense was necessarily excluded" from the meaning of "occurrence").

The Court finds that the complaint in the Civil Matter does not allege an "occurrence" giving rise to AAIC's duty to defend or duty to indemnify—regardless of if the gun went off inadvertently or whether R. Cerny acted in self-defense.

**B.** *Is the Shooting Excluded by the Intentional/Criminal Acts Exclusion?*

AAIC also argues that the shooting is excepted from coverage under the Intentional/Criminal Act Exclusion. Because the Court has found that the complaint in the Civil Matter does not allege a covered "occurrence," the Court need not consider whether

the shooting is also excluded under the Intentional/Criminal Acts Exclusion.

### III. Conclusion

The Court concludes that because the allegations in the underlying Civil Matter do not constitute an "occurrence" under the Policy, Plaintiff owes no duty to defend or indemnify Defendant in connection with the Civil Matter.

Accordingly,

**IT IS ORDERED** granting Plaintiff's Motion for Summary Judgement (Doc. 24).

**IT IS FURTHER ORDERED** that the Clerk of Court should enter judgment accordingly and terminate this case.

Dated this 12th day of July, 2019.

_____
Honorable Susan M. Brnovich
United States District Judge